Afterwards
chancellor Mathews
delivered the opinion of the court:
In whatever light this case is viewed, whether considering Mr. Lord acting as a rightful executor in consc- *214 quence of his marriage with the executrix, or as executox* de son tox-t, as a trustee, or as a stranger, who got possession of the infants’ property, — he lias acted directly contrary to the will of the testatoi’, which ordered that his estate should he improved, as his executor should think fit. He has committed a great breach of trust, for which he was punishable out of his estate if living; and his executors under the statute of Charles, and William and Mary, and our act of assembly of March, 1789, are equally answerable with himself as far as they have as • sets in their hands. All the cases go to prove that the court will indemnify a security for any loss he might sustain by paying debts for which he was security, by assigning over the security on judgment: And to dispose of all the testator’s estate, even his wife’s parapharnalia, before security should be made liable. Trustees may be guilty of a breach of trust, and are punishable for it. Where executors lay out assets of testator, in the purchase of lands, they should be restored to testator’s estate. Committing a devastavit, executors are consider ed as trustees of the estate; and if a stranger enters and receives the profits of an infant’s estate, in consideration of this conduct, he shall be looked on as a trustee for the infant. The bankrupt laws put all creditors on a footing; yet where the property can be come at that was sold and not paid for, the court unifox’mly decreed, that the vendor has a specific lien on it, and it should stand charged with payment of purchase money,though no specific agreement.* In the case of the Baptist congregation vs. administrator *215 of Leigh, decided in this court, the administrator was ordered to restore bonds to the congregation for bonds which he had received belonging to the trust — That case was not contested, but that does not vary the matter; all the foregoing cases prove, that Mr. Lord acting as executor, trustee, or a stranger, was equally answerable for his misconduct.
Defendants counsel have insisted, that where creditors hy the strictest rules of the court have got an advantage, the court wall not deprive them of it; and that all creditors in equal decree must come in pari passu; and that this court aims at equality of satisfaction, as far as possible, in the administration of assets. We perfectly accord with the cases in opinion; hut then it remains for the court to determine the point whether the plaintiff shall he considered as bond creditors or simple contract creditors: Having settled that point, in whatever class complainants stand, they must be paid by defendants pari passu. As to referring it to a court of law to determine whether complainants shall-he considered as bond or simple contract creditors, this. court we apprehend are full as competent to decide it as a court of law, and rather more so. What relief could complainants have at law, had they brought an action for money received, and how could it have been supported? Where are their proofs? They could have no discovery by the oath of defendants, but in this court, where the whole transaction could he sifted and unravel-led, and the nature of the debts particularly specified; from whom received, when paid, and the amount: and having made the discovery, this court can as well order payment as a court of common law. Discovery draws after it relief. The case in 3 Atk. 333, does not attribute any exclusive jurisdiction to the court of common law; the judge only says, that bond creditors and simple contract creditors shall be considci’ed in the same light in this court as at common law. But should this court, under the circumstances of this case, determine that complainants ought to be considered as bond creditors, they will be. paid as such pari passu.
*216 The case of Verno vs. Vawdry, Ventris 40, lias boon much relied on by defendants’ counsel. It is a very ex» traordinary one. There is no case stated to shew upon what principles the court determined the question: There arc ^ircc points settled, but it docs not appear how they came before the court for determination; they are totally unconnected; the first is upon a mere point of practice relative to an original and amended bill, being considered as one; 2d, that a breach of trust is considered as a simple contract debt, and can only fall on tlic personal estate of the trustee; the 3d is relative to a marshalling of assets. Unless some reasons for the determination appear in the cases cited, the court will take no notice of them, nor hold itself bound to follow the determination of any foreign court as a guide for its decisions, further than as such determinations may appear to be founded in equity and good conscience. The case abovementioned, cannot he considered as the law of this country, though it may be in England; because there, lands are only liable to bond debts and specialties where the heir is bound; whereas in this state, a man’s real estate is equally liable with his personal property to the payment of all his debts. If was said that complainants arc not specialty creditors, having no bond from Mr. Lord. It may be asked, how it was possible for them to obtain one; they have but lately come of age, and he has been dead several years. It was contended, that Mr. Lord had a right to retain as executor in preference to complainants. But his wife, Mrs. Lord, was only a legatee, entitled to a third of tlio estate, under the same clause of the will that gives the rest to her children. Claiming under the same person, and under the same clause of the will, there can be no priority between them. Mr. Lord was a mere stranger, an intruder; as to Mr. Gadsden, the testator, he was no creditor; but taking from testator’s bounty to his wife, he must take it upon the same terms as complainants. This, is not a case between a creditor executor, and another creditor; in such case he would undoubtedly have had a right to retain against creditors of equal rank, but this is a case between the heirs of teátator and his executor, who *217 bias possessed himself of all the assets, and converted them to his own use. It was contended for the creditors, that Mr. Lord should be allowed his full third, and complainants receive a dividend as his simple contract creditors} but upon what principle is not discoverable, unless it may •be supposed Mr. Gadsden intended to make a compliment of one third of his estate, to the creditors of any after husband his wife might marry, absolutely, and subject the re» ihaining two thirds to a diminution, by his children coming in pari passu with such second husband’s simple contract creditors, to whom probably the whole money received on account of the estate had been already paid->-It does not appear how Mr. Lord disposed of the money he received* Suppose he had paid off all his simple contract creditors with it, would it-no4"be highly unreasonable and unjust to say, although he has used the complainants’ money received on bond debts, in paynient of his simple contract debts, they should nevertheless be considered only as .simple contract creditors, when probably he has left only-assets sufficient to pay his' bond creditors? Hard would be the lot of infants, if, where the misplaced-confidence of the testator in appointing* executors who were unworthy of the trust, and who should waste his assets, this court had not a power to make them account for their misconduct} but peculiarly hard would be the case of chib» dren, if, by the unbounded confidence of a husband in appointing his wife executrix, and her making aft improvident second marriage, she should put her children’s estate in the power of such second husband, wbo might waste or dissipate the whole of it, and leave them destitute, if this court had not power to make him account for Ins malconduct. Such would be the situation of the complainants in the present case: But this court having the peculiar charge of Infants, will take care of their interest, and not permit it to he wasted by an ungracious executor. If the court once allowed the doctrine contended for by defendant to he just and equitable, that executors may call ¿1 all debts due the testator by bond, and make what use they please of the money, and that the infant legatees or children of the testator shall only be considered in the light *218 of simple contract creditors of the executors, we may say as lord chancellor King did in the case of Mansel vs. Man-sel, that it will be making proclamation, that all the executors in this country Eire at liberty to destroy or convert own USP’ "with impunity, the property of all the orphans committed to their care, which they are intrusted only to preserve. The case of Powell and Bell, as far as our researches have gone, is the only case that bears any analogy to the present case; where an executrix, who was entitled to a third paid of the personal estate, wasted great part of it, married a second husband and died. On a bill against the husband for an account and satisfaction, it was decreed, that he should be charged in nature of a debt absolutely for so much as came to his or his wife’s hands after marriage, and for what came to her hands before second marriage, to have satisfaction against husband, so far as he had any of his wife’s estate — The decree was affirmed on appeal. So here, — Mr. Lord him - self having wasted the assets, his executors should be answerable in like manner. It is admitted by the answer of defendants, that their testator received considerable sums of money for bond debts, and also for simple contract debts due the estate of Mr. Gadsden. As Mr. Lord in right of his wife was entitled to a third part and received p, many years ago, it would be extremely unjust and unreasonable to say he should have this whole proportion, which lie undoubtedly applied to payment of bis own debts, and that the complainants, the infant legatees, and children of the testator, should be considered merely as his simple contract creditors, in which case they will receive little or nothing. Mr. Gadsden having by his will ordered, that his estate should be improved as his executors should think proper, and them being no other way of improving money, than by putting it out at interest, and eis Mr. Lord retained the whole in his own possession, this court, which always looks upon those things as done which ought to ho done, will, under the circumstances of this case, consider Mr. Lord as a bond debtor, as to so much of the assets as he received for bond debts, and debtor on simple contract for such sums as were origin-, ally simple contract debts. ■
u. a.p. 317.
X; was ihmd’»re. decreed,, that it he referred to the master to examine the accounts of defendants’ testator, and ascertain what sums of money were received by him on account of Thomas Gadsden’s estate for bond, and what for notes and accounts; the times when they were respectively received; how much for principal, and what for interest; and whether it be liable to any and what depreciation — That the master do also ascertain the annual income of Mr. Gadsden’s estate, and deduct therefrom three fourths of such income annually, until the eldest of complainants attain the age of twenty-one years, the testator having by Ids will appropriated so much for the maintenance of his wife and children — That whatever balance shall appear to he then due the estate, complainants shall be c onsidered as bond creditors, as to two thirds of what was received on the bond debts; and be ranked as simple contra; t. creditors for wiiat was received on the, notes and accounts — That they be allowed interest on such sums from the time the eldest of complainants attained his age of twenty-one years; and that the sayl money he paid to them by the defendants in the same, proportions as the other bond and simple contract creditors of their testator are entitled to receive their debts: And that the same be paid agreeably to the terms of the instalment act: And that the defendants do pay the costs of suit.
And in September, 1791, ilio master made his report conformably to the decretal order of the court, which was confirmed.

 See as to the following assets, 2 Vescy 265-9, Jaeomb to. Har-ivood — In this case the court said that executors de son tort, or strangers meddling with an estate, they shall be accountable as trustees: Also, that where the property can be come at, that was sold and not paid for, the court uniformly decrees the vendor should have a specific lien; and it should stand charged with the payment of the purchase money, though no special agreement. — Sed vide decree of thisr court in the case oFYV. L. Smith, and others, representatives of W. AVragg to. the comptroller general and others, decided in May, 1807, wherein the court decreed, that the vendor who did not take a mortgage of the property sold, has no equitable líen, as tfjjto entitle hi® ty a preferences er other creditor;.